———————————————————————

)
)
**UNITED STATES OF AMERICA**       )
)
**v.**        )       **Criminal Case No. 10-108 (RCL)**
)
**SHELLY S. SINGHAL,**     )
       **Defendant.**     )
)

———————————————————————  )

## MEMORANDUM OPINION

Before the Court is the government's Motion [20] to compel production of documents from SBI USA, LLC and Nixon Peabody, LLC, and the government's Supplemental Motion [31] to compel production of documents from SBI USA, LLC. Of the hundreds of documents originally the subject of these Motions to compel, the defendant now only asserts privilege claims as to thirteen documents.[1] Furthermore, three additional documents[2] are being withheld by the defendant subject to privilege claims asserted by Xinhua Finance, which the Court will construe as being asserted by the defendant. Upon consideration of the government's Motion [20], third party Nixon Peabody's response [28], government's reply [30], government's Supplemental Motion [31], defendant's opposition [32], government's reply [34], defendant's additional response [35], government's supplemental memorandum of law [37], defendant's response [38], defendant's notice [39] of withdrawal of claims of privilege as to four documents

---

[1] The documents withheld pursuant to the defendant's privilege claims are: 9, 14, 31, 36, 59, 76, 84, 102, 105, 516, 538, 623, and 664. These numbers correspond to the tabs in the binders provided to the Court by defense counsel. Although only thirteen document numbers are listed here, certain tab numbers correspond to multiple documents that were listed separately on the defendant's original privilege log. As a result, according to the numbers listed on the defendant's original privilege log, seventeen documents remain subject to the government's Motions to compel. However, for the sake of clarity, the Court will refer to these documents by the numbers on the binder tabs and not to the numbers listed on the original privilege log.

[2] Documents 95, 97, and 100.

subject to pending motion to compel, all ex parte filings regarding these motions, the applicable law, and the entire record in this case, the Court will GRANT the government's Motions as to the remaining documents withheld by the defendant pursuant to privilege claims.

## I. BACKGROUND

The defendant in this criminal securities fraud case, Shelly S. Singhal, is the owner and Chairman of SBI USA, LLC, formerly an investment company with offices in Newport Beach, California. On April 27, 2010, the grand jury returned a three count Indictment in the instant case charging the defendant Singhal with conspiracy (18 U.S.C. § 371), mail fraud (18 U.S.C. § 1341), and securities fraud (15 U.S.C. §§ 78j(b) and 78f(f)) concerning his involvement in three alleged scalping schemes. On May 20, 2011, the grand jury returned a ten count Indictment in a separate case against Singhal and two others, Loretta Fredy Bush and Dennis Pelino, charging them with conspiracy (18 U.S.C. § 371), mail fraud (18 U.S.C. § 1341), and false statements (18 U.S.C. § 1001), concerning their involvement in an alleged scheme to defraud a publicly traded company, Xinhua Finance Limited ("Xinhua Finance"), through a series of undisclosed and disguised related-party transactions and insider trading of Xinhua Finance shares. Singhal allegedly used nominee companies, including Entrée Capital, LLC ("Entrée Capital"), Wiremill LLC ("Wiremill"), Bedford Proprietary Trading LLC ("Bedford"), Region 1 Partners LLC ("Region 1"), and Hyperion Investments Limited ("Hyperion"), to engage in the charged fraud schemes.

The government contends that Singhal used nominees, principally Robert Brown, to engage in the alleged fraud. According to the government, Brown—Singhal's former attorney and business partner—was both an owner and manager of several nominee companies. Brown allegedly assisted Singhal in perpetrating the alleged scalping transactions by transferring funds

and concealing the source of funds used to promote the stocks at issue. Brown also allegedly assisted Singhal in perpetrating the alleged scheme involving Xinhua Finance in part by transferring funds and preparing false and back-dated documents. After the FBI began to investigate Brown, Brown pled guilty to obstruction of justice, agreed to cooperate with federal authorities in their continuing investigation, and turned over to the government a variety of materials related to these schemes.

The instant motion revolves around assertions of privilege by SBI over a number of documents whose production the government seeks to compel.[3] The government's original Motion to compel was filed on September 17, 2010, and a supplemental Motion to compel was filed on June 15, 2011. Of the hundreds of documents that SBI originally withheld on the basis of privilege, SBI has withdrawn its claims of privilege as to all but thirteen documents, which are the subject of this Memorandum Opinion.

The defendant also withholds three additional documents based on privilege claims asserted by Xinhua Finance. The government, however, has not moved to compel Xinhua Finance, and the defendant has responded to the government's Motion to compel SBI by expressing Xinhua Finance's privilege claims. As neither party has addressed the question of the defendant's authority to assert these privilege claims on behalf of Xinhua, the Court will treat these privilege claims as being properly asserted by the defendant and will consider them in this Memorandum Opinion as well.

## II.     LEGAL STANDARD: ATTORNEY-CLIENT PRIVILEGE

The defendant's privilege claims are all premised on variations of the law governing attorney-client privilege. A fundamental principle of criminal law is that the public "has a right

---

[3] The parties agree that Singhal was in complete control of SBI. For purposes of this Motion, therefore, both parties and the Court will treat SBI's assertions of privilege over these documents as if they were asserted by Singhal himself as party defendant.

to every man's evidence," but that right is "subject to except[ion] for those persons protected by a constitutional, common-law, or statutory privilege." *In re Grand Jury*, 475 F.3d 1299, 1304 (D.C. Cir. 2007). One exception is the attorney-client privilege, which applies only if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984). The Supreme Court has held that because the privilege obstructs the search for truth, courts should construe it narrowly. *See, e.g.*, *Fisher v. United States*, 425 U.S. 391, 403 (1976). The party asserting the privilege bears the burden of "present[ing] to the court sufficient facts to establish the privilege." *In re Sealed Case*, 737 F.2d at 99.

## III. ANALYSIS

The defendant's privilege claims over the documents that remain the subject of this Motion can be broken down into multiple variations of the attorney-client privilege.

### A. Broker-Client Privilege between Singhal and Dennis Pelino

The defendant's privilege claims over one set of documents—document numbers 664, 9, 76, and 84—rely upon the interaction between two types of privilege. The defendant asserts that the documents in question are privileged attorney-client communications between Dennis Pelino and his lawyers, Joel Karp and Robert Brown. According to the defendant, there was also a financial advisor-client relationship between Singhal and Pelino, and that when the communications between Pelino and his lawyers were shared with Singhal, they still remained

subject to the attorney-client privilege. The government, by contrast, argues that when Pelino shared his privileged communications with Singhal, the attorney-client privilege was waived, and that moreover, Singhal cannot assert the attorney-client privilege premised upon a relationship to which he was not even a party.

In order for the attorney-client privilege to be valid, the client "must show that the information provided to its lawyers was intended to be confidential and was not disclosed to a third party." *Citizens for Responsibility & Ethics in Washington v. National Archives & Records Admin.*, 583 F. Supp. 2d 146, 158 (D.D.C. 2008). However, the attorney-client privilege "undeniably extends to communications with 'one employed to assist the lawyer in the rendition of professional legal services.'" *Linde Thomson v. Resolution Trust Corp.*, 5 F.3d 1508, 1514 (D.C. Cir. 1993). In other words, the attorney-client privilege may be preserved even when confidential communications are disclosed to a third party—such as an investment banker—as long as the third party is serving an "interpretive function" to aid the lawyer in helping the client. *See Calvin Klein Trademark Trust v. Wachner*, 124 F. Supp. 2d 207, 209 (S.D.N.Y. 2000).

Moreover, there is an additional limitation on the attorney-client privilege for communications that originate from the lawyer rather than from the client. "[W]hen the attorney communicates to the client, the privilege applies only if the communication 'is based on confidential information provided by the client.'" *Brinton v. Dep't of State*, 636 F.2d 600, 603 (D.C. Cir. 1980) (quoting *Mead Data Cent., Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 254 (D.C. Cir. 1977)).

### 1. Document 664

Document 664 is an August 17, 2005 letter sent to Dennis Pelino from his attorney Joel Karp, in which Karp is rendering legal advice to Pelino regarding alternative legal and tax

structures for a possible pre-paid forward contract. Although the nature of this correspondence clearly demonstrates that it is protected by the attorney-client privilege, the privilege exists between Pelino as the client and Karp as his attorney. Singhal has not established that he and Karp had an attorney-client relationship in the context of this communication, nor has Singhal made any showing that he was employed to assist Karp in rendering legal services to Pelino regarding the subject of Pelino and Karp's communication. As Singhal has not made the requisite showing that this communication was shared with him so that he could serve an "interpretive function," Singhal cannot properly assert the existence of an attorney-client privilege over the communication between Pelino and Karp. The Court therefore finds that Document 664 is not privileged.

### 2. Document 9

Document 9 is a December 27, 2005 letter from Karp to Pelino in which Karp renders legal advice to Pelino regarding Sino Investment Holdings, a company that was jointly owned by Pelino and Singhal and for which Karp served as the attorney. Again, even though this communication is subject to the attorney-client privilege arising from the attorney-client relationship between Pelino and Karp, the defendant has made no showing that the privileged communication between Pelino and his attorney was shared with Singhal in his capacity as Pelino's financial advisor in order to assist Karp in rendering professional legal services to Pelino. The defendant also points to the fact that Karp billed Singhal for the time it took to draft the letter to Pelino as evidence that Singhal was a part of the privileged relationship between Karp and Pelino. However, "[t]he payment of legal fees does not determine whether an attorney client relationship exists." *Quintel Corp., N.V. v. Citibank, N.A.*, 589 F. Supp. 1235, 1239 (S.D.N.Y. 1984). The Court therefore finds that Document 9 is not privileged.

### 3. *Document 76*

Document 76 is a series of six e-mails, the first of which Pelino sent to Singhal and Brown on July 21, 2007. The first e-mail is withheld on the basis of an attorney-client privilege, while the other five e-mails in the chain have been produced. The defendant has established that Pelino and Brown maintained an attorney-client relationship at the time of this communication and that the communication was sent for the purpose of seeking legal advice, but yet again Singhal makes no showing that Pelino and Brown included him in this communication so that he could assist Brown in rendering legal advice to Pelino. The Court therefore finds that Document 76 is not privileged.

### 4. *Document 84*

Document 84 is a March 20, 2007 letter from Karp to Pelino in which Karp provides Pelino with legal advice regarding loan restructuring. Once again, despite a clear showing that this communication is subject to an attorney-client privilege arising from the relationship between Karp and Pelino, Singhal has not offered any evidence to show that he was forwarded this communication so that he could serve an "interpretive function" and help Karp render legal advice to Pelino. The Court therefore finds that Document 84 is not privileged.

## B. Crime-Fraud Exception

The government asserts that a second set of documents over which the defendant claims the attorney-client privilege—document numbers 516 and 538—are subject to the crime-fraud exception. It is well established that the attorney-client privilege is waived when the client uses the relationship in the commission of a crime or fraud. *See Clark v. United States*, 289 U.S. 1 (1933). Communications otherwise protected by privilege are not protected if they "are made in furtherance of a crime, fraud, or other misconduct." *In re Sealed Case*, 754 F.2d 395, 399 (D.C.

Cir. 1985). In determining whether the crime-fraud exception applies, the Court employs a two-pronged test: (1) there must be a prima facie showing that the client was engaged, or planned to engage, in a crime when he sought the advice of counsel, or committed a crime after seeking such advice; and (2) the attorney's assistance was obtained in furtherance of the crime, that is, there must be a showing of some relationship between the crime or fraud and the privileged information. *In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997). To show that the crime-fraud exception applies, the proponent "need not prove the existence of a crime or fraud beyond a reasonable doubt." *In re Sealed Case*, 754 F.2d at 399. Instead, it must offer "evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud." *Id.*

The defendant argues that documents 516 and 538 are attorney work product—drafts of secured loan agreements prepared by attorney Robert Brown for Singhal and SBI—and that because there is no indication that these were shared with any third parties outside of SBI, they are privileged. However, in its ex parte submissions to the Court, the government has offered evidence that if believed by the trier of fact would establish the elements of an ongoing crime or fraud. The government's evidence suggests a close linkage between the documents prepared by and discussed with Brown and Singhal's alleged involvement in perpetrating and perpetuating fraudulent financial transactions through the use of various holding companies, at least two of which are the subject of documents 516 and 538. The Court accordingly finds that documents 516 and 538 are subject to the crime-fraud exception to the attorney-client privilege doctrine and therefore not privileged.

### C. Robert Brown's Dual Legal/Business Role

The government argues that a third set of documents over which the defendant claims the attorney-client privilege—document numbers 623, 14, 31, 36, 59, 102, and 105—should be produced because these communications between Singhal and Robert Brown occurred when Brown was acting not in a professional legal capacity, but rather in a role as a manager of or investor in various corporate entities that were the subject of the communications. The defendant, in turn, contends that each document demonstrates a specific request by Singhal for legal advice and that Brown was acting solely as Singhal's attorney, and not as a corporate manager or investor, in these transactions and communications.

Where a lawyer has additional responsibilities "outside the lawyer's sphere," communications are sheltered by the attorney-client privilege "only upon a clear showing" that they were made in connection with the lawyer acting "in a professional legal capacity." *In re Sealed Case*, 737 F.2d at 99.

The defendant has not made a clear showing that Brown was acting in his legal capacity in the communications between Singhal and Brown in documents 623, 14, 102, and 105. In fact, the government's ex parte submissions to the Court offer evidence that at the time of the communications, Brown was simultaneously acting in his capacity as the manager of or investor in the various corporate entities that are the subjects of these communications. Because these management and investor responsibilities lay "outside the lawyer's sphere," and the defendant has not made a clear showing that the communications between Singhal and Brown were made in connection with Brown acting in a professional legal capacity, documents 623, 14, 102, and 105 are not sheltered by the attorney-client privilege that the defendant asserts.

With regard to documents 31, 36, and 59, the defendant has made the requisite showing that Brown was acting in a professional legal capacity and not "outside the lawyer's sphere" during these communications with Singhal. However, upon consideration of the evidence offered in the government's ex parte submissions to the Court, the Court finds that the crime-fraud exception to the attorney-client privilege applies to these documents. The government has offered evidence that if believed by the trier of fact would establish that the corporate entities and capital structures referenced in the communications between Brown and Singhal are closely intertwined with their alleged involvement in perpetrating and perpetuating fraudulent financial transactions.

The Court therefore finds that documents 623, 14, 31, 36, 59, 102, and 105 are not privileged.

### D.  Xinhua Finance's Asserted Privilege

The defendant also withholds Documents 95, 97, and 100 from production on the basis of an attorney-client privilege claimed by Xinhua Finance. Despite the defendant's showing that an attorney-client privilege existed as to these documents, the government's ex parte submissions the Court provide evidence that if believed by the trier of fact would establish that the corporate entities and capital structures referenced in these communications were related to the defendant's alleged involvement in the alleged fraudulent transactions at the heart of this case. The Court therefore finds that documents 95, 97, and 100 are not privileged.

### IV.    CONCLUSION

For the foregoing reasons, the Court will GRANT the government's Motions as to the remaining documents withheld by the defendant pursuant to privilege claims: documents 9, 14,

31, 36, 59, 76, 84, 95, 97, 100, 102, 105, 516, 538, 623, and 664.  A separate Order consistent with this Memorandum Opinion will issue this date.

Signed by Royce C. Lamberth, United States District Judge, on February 2, 2012.